UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Said Moussa Gouleed,** | **Civil No. 07-4152 (DSD/SRN)** |
| **Petitioner,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Timothy Wengler, Warden,** | |
| **Respondent.** | |

Michael F. Cromett, Esq., Minnesota State Public Defender's Office, 540 Fairview Avenue North, Suite 300, St. Paul, Minnesota 55104, on behalf of Petitioner Said Moussa Gouleed

Mark Nathan Lystig, Ramsey County Attorney's Office, 50 West Kellogg Boulevard, Suite 315, St. Paul Minnesota 55102; and Peter R. Marker, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, St. Paul, Minnesota 55101, on behalf of Respondent Timothy Wengler

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter is before the undersigned United States Magistrate Judge on Petitioner Said Moussa Gouleed's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court recommends that the petition be denied.

I. PROCEDURAL AND FACTUAL BACKGROUND

On November 8, 2002, Petitioner was caring for his six-week-old daughter at home. As he was preparing to give her a bottle, he later claimed, he accidentally dropped her on the floor causing her head to hit the floor and a wall. His daughter died later that night. Ramsey County Medical Examiner Dr. Michael McGee performed an autopsy and found multiple injuries to the

infant's head, face, ribs, arms, legs, forearm, wrist, and finger.  Some of the injuries were recent, others were in the process of healing.  Dr. McGee concluded that the injuries had been caused by child abuse and ruled the death a homicide.  Petitioner was charged with second-degree murder.

Petitioner retained an forensic expert, Dr. John Plunkett, in preparation for trial, and Dr. Plunkett prepared a written opinion on the cause of the infant's death.  He based his opinion on materials that the state had provided to him, including photographs, the autopsy report, and microscopic slides.  He did not indicate that he had conducted any testing of his own.  During a pretrial interview by the state, Dr. Plunkett opined that the infant's skull had been fractured days before her death, not when she was in Petitioner's care on November 8, 2002.  He based this opinion on the levels of iron pigment in the microscopic slides, but again, he did not notify the state that he had conducted any testing of his own.

A jury trial commenced on October 31, 2003.  One of the state's witnesses, neuro-radiologist David Kispert, testified that he disagreed with an opinion attributed to him in another doctor's report regarding the dates of the infant's head injuries.  Petitioner moved for a mistrial on the basis that the state had failed to disclose a pretrial meeting with Dr. Kispert.  The court denied the motion but struck all of Dr. Kispert's testimony.  The state also called Dr. McGee to testify about the infant's injuries.[1]  He testified that his examination indicated brain hemorrhaging of a degree consistent with children who had been in car accidents while not restrained, and that the injuries were caused by closed head trauma sustained within hours of death and consistent with child abuse.  On cross-examination, Dr. McGee testified that iron

---

[1] Petitioner moved a second time for a mistrial because a juror cried during Dr. McGee's testimony.  The court denied this motion as well.

staining was an effective way to date injuries and that he had performed such tests to date the infant's injuries. Neither the prosecutor nor defense counsel asked Dr. McGee any further questions about iron staining, and his microscopic slides were not admitted into evidence.

Petitioner's defense theory was that his daughter had sustained head injuries prior to November 8, 2002, and that those injuries had caused her death. Petitioner's only witness was Dr. Plunkett. During his testimony, the jury was shown microscopic slides of the infant's head injuries. Some of the slides had been iron-stained to date the injuries. To the parties' surprise, Dr. Plunkett said that <u>he</u> had performed the iron staining tests about which he was testifying. When the prosecutor realized that Dr. Plunkett had performed the testing himself and was not referring to the slides provided by the medical examiner, he objected to the testimony because Dr. Plunkett had not indicated in his report, in his pretrial interview, or at any other time that he had conducted any testing. The state moved the court to strike Dr. Plunkett's testimony as it had done with Dr. Kispert's. Petitioner objected because it would leave him without any support for his theory of the case. The court remarked that Dr. Plunkett's undisclosed evidence went to "the very essence of this case" and called a recess. <u>State v. Gouleed</u>, 720 N.W.2d 794, 798 (Minn. 2006).

The court considered continuing the trial to allow the state to review the new evidence and prepare a rebuttal. When the court met with the parties, it mentioned the possibility of a mistrial because it did not want to deprive Petitioner of his evidence. Petitioner wanted Dr. Plunkett to continue testifying after a curative instruction was administered to the jury. The state persisted in its objection to Dr. Plunkett's testimony as well as to a continuance. The court recessed a second time so that the parties could consider the options of a mistrial, a continuance,

or striking Dr. Plunkett's testimony.

When the court reconvened to put the parties' positions on the record, the state argued that a continuance would not remedy the impression that Dr. Plunkett's testimony had exposed the state. Petitioner argued that a continuance was most appropriate and objected to a mistrial. Over Petitioner's objection, the court declared a mistrial. The court believed that a curative instruction would not remedy the violation and told the jury, "I saw no way that I could tell you to disregard certain portions of the testimony. Nor do I think it would have been fair to the defendant to disqualify his expert." Id. at 799. Petitioner moved to dismiss the charge on double jeopardy grounds before retrial. In denying the motion, the court said that "the state was deprived of a fair trial when the defense did not provide full disclosure of its expert's basis for opinions going to [the] very heart of the issue—the age of the injuries." Id. Petitioner was retried, convicted, and sentenced to 225 months imprisonment.

On appeal, the Minnesota Court of Appeals reversed the conviction on the grounds that the court's declaration of a mistrial lacked a "principled conclusion that there was a manifest necessity for a mistrial." State v. Gouleed, No. A04-700, 2005 WL 1216294, at *10 (Minn. Ct. App. May 24, 2005). The appellate court also faulted the trial court's failure to investigate alternative remedies in place of a mistrial. Id. The Minnesota Supreme Court reversed the court of appeals, holding that the trial court had shown sufficient necessity even without explicitly using the term "manifest necessity" in reaching its conclusion. State v. Gouleed, 720 N.W.2d at 802.

Petitioner is presently seeking habeas relief pursuant to 28 U.S.C. § 2254. His sole argument is that his second trial violated his constitutional right to be protected against double

jeopardy.

## II. DISCUSSION

### A. Standard of Review

Federal habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Anti-Terrorism and Effective Death Penalty Act (AEDPA) restricts habeas review to cases that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).

The "contrary to" and "unreasonable application" clauses provide different standards for review. Williams v. Taylor, 529 U.S. 362, 405 (2000). In evaluating whether a decision is "contrary to" Supreme Court precedent, a court "may grant the writ if the state court arrives at a conclusion opposite to" Supreme Court precedent. Id. at 412-13. In evaluating questions of mixed fact and law, the court applies the "unreasonable application" standard. See Evans v. Rogerson, 223 F.3d 869, 872 (8th Cir. 2000).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. Such a standard is the "governing legal principle . . . set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (citing Williams, 529 U.S. at 405; Bell v. Cone, 535 U.S. 685, 698 (2002)).

**B.     Principles of Double Jeopardy**

The Fifth Amendment protects a defendant from being put in jeopardy twice for the same offense.  U.S. Const. amend. V.  The Fourteenth Amendment applies that protection to the states.  U.S. Const. amend. XIV; Benton v. Maryland, 395 U.S. 784, 794 (1969).  Jeopardy attaches when a jury is sworn.  United States v. Martin Linen Supply Co., 430 U.S. 564, 569 (1977).

In cases where a mistrial and subsequent retrial raise a double jeopardy concern, the Supreme Court has long required demonstration that there be "manifest necessity" for a mistrial to be declared over a defendant's objection.

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.  They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere.  To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes. . . .  But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

United States v. Perez, 9 Wheat. 579, 580 (1824).  Whether "manifest necessity" means "evident necessity" or "imperious necessity," the meaning is the same.  Arizona v. Washington, 434 U.S. 497, 505 n.17 (1978).  The Supreme Court considers there to be varying degrees of necessity, and a "high degree" of necessity is necessary to support a mistrial.  Id. at 506.

In certain circumstances, a defendant's right to have his trial concluded by a particular tribunal may be "subordinated to the public's interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury."  Id. at 505.  In cases involving misconduct, the court must "hold litigants on both sides to standards of responsible professional

6

conduct in the clash of an adversary criminal process." United States v. Jorn, 400 U.S. 470, 485-86 (1971). A reviewing court should give "special respect" to a trial court's decision to grant a mistrial. Washington, 434 U.S. at 510.

### C. Whether the State Court's Decision Was Contrary to Clearly Established Federal Law

Petitioner argues that the Minnesota Supreme Court's decision is contrary to several Supreme Court cases. There are two ways a decision can be contrary to clearly established Supreme Court precedent. First, a decision is contrary "if the state court applies a rule that contradicts the governing law set forth" in such precedent, meaning that the decision was "diametrically different," "mutually opposed," or "opposite in character or nature." Williams, 529 U.S. at 406. Second, a decision is contrary "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a result different from [its] precedent." Id.

In Petitioner's case, the Minnesota Supreme Court applied the "manifest necessity" standard originally set forth in Perez and later expounded in Illinois v. Somerville, 410 U.S. 458, 461 (1973). State v. Gouleed, 720 N.W.2d 794, 800 (Minn. 2006) ("A criminal defendant who objects to the declaration of a mistrial cannot be retried unless there was a 'manifest necessity' for the mistrial or the ends of public justice would otherwise be defeated.") The court noted that the standard is fact-intensive, thus escaping easy categorization, yet flexible, seeking to attain fairness for the defendant, the prosecutor, and the public interest. Id. (citing Somerville, 410 U.S. at 464; United States v. Givens, 88 F.3d 608, 613 (8th Cir. 1996)). The court examined the record for a "high degree" of necessity, id. at 801 (citing Washington, 434 U.S. at 506), which it

found was created by Petitioner's expert's deliberate and repeated concealment of his additional testing, which "went to the very heart of the state's case." Id. The court rejected Petitioner's contention that the trial court failed to discuss the consequences of double jeopardy and failed to explore less drastic alternatives. Id. at 802. Although the record below was "somewhat lacking," it nevertheless showed that the trial court neither rashly considered nor failed to evaluate alternatives. Id. Ultimately, the public's interest in a fair trial surmounted Petitioner's right to have his case resolved by a particular tribunal, especially considering that it was Petitioner's witness who committed the significant discovery error. Id. The court concluded,

> We do not find anything in the record to suggest that the state took any action to precipitate the mistrial. To permit the defendant's key witness to commit a serious discovery error and then to bar retrial of the case would not serve the principles rooted in the double jeopardy doctrine.

Id. at 803.

The facts of Petitioner's case are not "materially indistinguishable" from any Supreme Court case. The jury heard the potentially prejudicial testimony in Petitioner's trial, which distinguishes his case from other Supreme Court cases addressing the validity of mistrials over a defendant's objection. See, e.g., Somerville, 410 U.S. at 459-60; Jorn, 400 U.S. 472-73. In addition, the trial court in Petitioner's case provided more consideration of alternative remedies than in Jorn. 400 U.S. 470 (1971). Thus, the "materially indistinguishable" standard is not applicable here.

Turning to the alternative interpretation of the "contrary to" clause, Petitioner has argued that the Minnesota Supreme Court's decision is contradictory to Somerville. In Somerville, the indictment contained a procedural error that could not be cured, and the effect of the technical error was to preclude jurisdiction. 410 U.S. at 460. A guilty verdict would have been

overturned "automatically" on appeal. Id. at 464. In Petitioner's case, the Minnesota Supreme Court used nearly synonymous language to conclude that, if the trial court had stricken Dr. Plunkett's testimony, the conviction "undoubtedly" would have been reversed. Gouleed, 720 N.W.2d at 802. Petitioner contends that this holding is contrary to Somerville because the Minnesota Supreme Court applied the reversal language outside of Somerville's procedural context. However, Somerville did not hold that mistrials can be declared only in instances of procedural error. See Somerville, 410 U.S. at 464 ("A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial") (emphasis added). Petitioner has not provided any authority that Somerville must be limited to such instances. Moreover, the Minnesota Supreme Court did not rely primarily on Somerville's automatic reversal language in reaching its decision; it based its decision principally on the need to uphold the public's interest in fair trials, the preservation of Petitioner's ability to fully present a defense, and the lack of any state involvement in precipitating the mistrial. Gouleed, 720 N.W.2d at 802-03.

Relatedly, Petitioner argues that the Minnesota Supreme Court changed the threshold for reversal established by Somerville by using the term "undoubtedly," whereas Somerville described "a verdict that could have been upset at will by one of the parties," 410 U.S. at 471 (emphasis added). However, the court's language did not in fact change that threshold. One of the synonyms cited by Petitioner for "undoubtedly" is "certainly," and the Somerville court held that a mistrial was justified when reversal was a "certainty." Id. at 464. An appeal would lead to the same result using either term.

9

Petitioner also argues that the Minnesota Supreme Court's decision contradicts Somerville by holding that a hypothetical violation or error is sufficient to constitute "manifest necessity." But there was no hypothetical error in Petitioner's case. Petitioner's expert witness, Dr. Plunkett, withheld evidence going to the very heart of Petitioner's case when he "deliberately and repeatedly avoided revealing" his independent testing. Id. at 801.

Next, Petitioner challenges the Minnesota Supreme Court's determination that there were no available alternatives to the mistrial as contrary to law. In declaring the mistrial, the trial court indicated that a continuance would not sufficiently remedy the problem because the jurors would not be able to ignore the testimony they had heard, the state would be prejudiced by a continuance, and Petitioner would be prevented from fully presenting his defense. The Minnesota Supreme Court noted, "we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." Id. at 801 (quoting Washington, 434 U.S. at 506). The court determined that any subordination of Petitioner's interests to the public's interest in a fair trial was consistent with Washington. Id. at 802. The court assessed the fairness of the alternatives as they related to the public's interest. Id. Based on the trial court's findings that the jury would not be able to ignore the testimony they had heard, that the state would be prejudiced, and that Petitioner would be prevented from fully presenting his defense, neither the trial court nor the state supreme court contravened clearly established federal law in weighing the alternatives to a mistrial.

Petitioner contends that the Minnesota Supreme Court's decision is contrary to United States v. Dinitz, 424 U.S. 600 (1976). In Dinitz, the Supreme Court stated that in cases of judicial or prosecutorial misconduct, the defendant should "retain primary control over the

10

course to be followed." Id. at 609.  Such a situation is not present in this case, however, as only Petitioner's expert committed a discovery violation.

Finally, Petitioner asserts that the Minnesota Supreme Court's decision is contrary to Washington.  The Court disagrees and regards Washington as strong support for Respondent's position.  In Washington, the defendant's attorney referred to a prior mistrial in his opening statement.  434 U.S. at 499.  The attorney told the jury that it would hear that the state supreme court had ordered a new trial because of prosecutorial misconduct.  Id.  The court ordered a mistrial, based on the improper comment.  As in Petitioner's case, the trial court granted the mistrial without making an explicit finding of "manifest necessity." Id. at 501.  Nor did the court explicitly state for the record that it had evaluated other options but found none to be adequate. Id.  The court did express its concern that its ruling could preclude a retrial.  Id.  The United States Supreme Court held that the mistrial was appropriate, in part out of deference to the trial court's finding of possible juror bias.  Id. at 511.  The Court noted that "[i]n a strict, literal sense, the mistrial was not 'necessary,'" but it nonetheless accorded the trial court's judgment "the highest degree of respect" given "the overriding interest in the evenhanded administration of justice."  Id.

In Petitioner's case, the trial court considered whether the failure to provide pretrial discovery pertaining to Dr. Plunkett's testing, and the resulting surprise at trial, could taint the jury's perception of the state's case.  The trial court also assessed whether a continuance could remedy the problem but determined that it would not remedy the impression created by Dr. Plunkett's testimony.  The trial court was in the best position to evaluate the effects on the jury and determine the remedy required.  See Washington, 434 U.S. at 513-14.  Here, the misconduct

11

by Petitioner's expert was at least as prejudicial as the improper comment in <u>Washington</u>. Dr. Plunkett's testimony pertained to the critical issue in the case—the timing of the fatal injuries. In addition, the testimony was introduced not at the beginning of the case, but after the state had rested. The risk of prejudice to the jury was markedly high and could not be assuredly cured by a continuance or instructions. The trial court's failure to make an explicit finding of "manifest necessity" is inconsequential because the record provides ample support for the mistrial. <u>See</u> <u>id.</u> at 516-17 ("Since the record provides sufficient justification for the state-court ruling, the failure to explain that ruling more completely does not render it constitutionally defective."). As in <u>Washington</u>, the trial court in Petitioner's case exercised "sound discretion" in arriving at its decision to declare a mistrial, <u>see</u> <u>id.</u> at 516, and the record clearly supports its ruling.

        **D.**    **Whether the Trial Court's Decision Was an Unreasonable Application of Clearly Established Federal Law**

A decision that "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case certainly would qualify" as an unreasonable application of clearly established federal law under § 2254(d)(1). <u>Williams</u>, 529 U.S. at 407-08. Alternatively, a state court decision that "unreasonably extends a legal principle from our precedent to a new context where it should not apply" or refuses to extend it where it should apply falls within the unreasonable application standard. <u>Id.</u> at 407. A court may not grant a habeas petition merely because a state court applied Supreme Court precedent incorrectly; the application of law must also have been unreasonable. <u>Id.</u> at 411.

In Petitioner's case, the Minnesota Supreme Court identified the cases of <u>Perez</u>, <u>Somerville</u>, and <u>Washington</u> as the relevant Supreme Court authority. See <u>Gouleed</u>, 720 N.W.2d

12

at 800-02.  Clearly established federal law requires a manifest necessity to grant a mistrial. Perez, 9 Wheat. at 580.  In defining manifest necessity, "the key word 'necessity' cannot be interpreted literally." Washington, 434 U.S. at 506.  Instead, "there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." Id.  Here, the actions and conclusions of the trial court demonstrate why the mistrial was necessary to a high degree.  The court found that the discovery violation went to "the very heart of the issue" in the case. Gouleed, 720 N.W.2d at 801.  The court recessed the trial to consider a continuance and to allow the state to review the evidence and suggest a course of action.  Petitioner urged the court to administer a curative instruction to the jury and permit Dr. Plunkett to continue testifying. After the recess, the court discussed with the parties the options of declaring a mistrial, permitting rebuttal testimony, or striking Dr. Plunkett's testimony.  The court recessed a second time to consider the options.  When court reconvened, the state argued that a continuance would not remedy the prejudicial impression caused by Dr. Plunkett's testimony, and from the court's subsequent comments to the jury, it is clear the court agreed.  Ultimately, the court declared a mistrial because a curative instruction would not remedy the violation and striking Dr. Plunkett's testimony would unduly prejudice Petitioner.  As the Minnesota Supreme Court said, "Whatever the shortcomings of the district court's consideration of ramifications, the mistrial decision cannot be said to have been made rashly or altogether without consideration of alternatives." Gouleed, 720 N.W.2d at 802.  Furthermore, although the trial court did not use the precise phrase "manifest necessity," the record establishes that this standard was met.

Petitioner's chief complaint with the reasonableness of the Minnesota Supreme Court's application of federal law is the court's inclusion of Somerville's automatic reversal language.

Petitioner contends that the court unreasonably extended the rule of Somerville to a non-procedural context.  As previously recounted, the indictment in Somerville contained a technical error that could not be cured at trial, and the defendant's conviction would have been reversed automatically on appeal.  410 U.S. at 460, 464.  Because of this procedural error, a mistrial was manifestly necessary.  The Minnesota Supreme Court cited Somerville in Petitioner's case and noted that if the trial court had stricken Dr. Plunkett's testimony, Petitioner's conviction "undoubtedly" would have been subject to reversal on appeal.  Gouleed, 720 N.W.2d at 802.  Importantly, however, the court did not hinge its decision on Somerville's automatic reversal standard.  Rather, the court's decision was firmly grounded in the precepts of the public's interest in fair trials and just judgments, Petitioner's right to fully present his defense, and the state's lack of involvement in the circumstances warranting the mistrial.  As Somerville remarked, "virtually all of the cases turn on the particular facts and thus escape meaningful categorization."  410 U.S. at 464.  In keeping with this rule, the Minnesota Supreme Court did not attempt to simply classify Petitioner's case as subject to automatic reversal and then end its analysis.  The court thoroughly considered the particular facts of Petitioner's case and determined that Dr. Plunkett's failure to disclose pivotal discovery constituted manifest necessity for a mistrial.

A trial court "is best situated intelligently to make such a decision [that] the ends of substantial justice cannot be attained without discontinuing the trial."  Gori v. United States, 367 U.S. 364, 368 (1961).  In Petitioner's case, the trial judge exercised sound discretion in ordering the mistrial.  The Minnesota Supreme Court reasonably applied clearly established federal law in upholding that decision.

### E. Conclusion

When the defense commits some type of misconduct, the defendant's "right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." Washington, 434 U.S. at 505. The discovery violation and Dr. Plunkett's surprise testimony undermined the public's interest in a full and fair trial. Failure to remedy the misconduct would have contravened "the need to hold litigants on both sides to standards of responsible professional conduct in the clash of an adversary criminal process." Jorn, 470 U.S. at 485-86. Similarly, allowing Petitioner to control whether his case proceeded after his expert commits significant misconduct would have contravened "the ends of public justice." Perez, 9 Wheat. at 580. The decisions of the trial court and the Minnesota Supreme Court comported fully with these principles and other clearly established federal law. Accordingly, Petitioner's application for federal habeas relief should be denied.

Based upon all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner Said Moussa Gouleed's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) be **DENIED**.

Dated: August 14, 2008

   s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing

with the Clerk of Court, and serving all parties by  **August 29, 2008**  , a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.